# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| OSCAR FERNANDEZ INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF ISIDRO FERNANDEZ, <br><br>       PLAINTIFF, <br><br>       v. <br><br> TYSON FOODS, INC., TYSON FRESH MEATS, INC., JOHN H. TYSON, NOEL W. WHITE, DEAN BANKS, STEPHEN R. STOUFFER, TOM BROWER, MARY A. OLEKSIUK, ELIZABETH CROSTON, TOM HART, HAMDIJA BEGANOVIC, JAMES HOOK, RAMIZ MUHELJIC, MISSIA ABAD BERNAL; AND JOHN/JANE DOES 1-10, <br><br>       DEFENDANTS. | Case No. 6:20-cv-02079 <br><br><br> **PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO REMAND** |

## SUMMARY

Defendants have not carried their burden to establish federal jurisdiction under any of their theories on removal. First, Defendants have failed to show federal officer jurisdiction because Defendants have not put forth any evidence that it was operating under the direction of a federal officer or that the actions of which Plaintiffs complain in their petition have a causal nexus to a federal officer's control. Thus, removal under the federal officer statute was incorrect. And second, Defendants have further failed to establish federal jurisdiction under the federal question doctrine. Plaintiffs' well-pleaded state petition raises exclusively state law tort claims. Accordingly, there is no federal question on the face of Plaintiffs' petition, nor is there any indication that Plaintiffs' claims arise out of federal law. As a result, the Court should remand this case to state court.

*Tyson's Tortious Conduct*

Defendants Tyson Foods, Inc. and Tyson Fresh Meats, Inc. (collectively "Tyson") needlessly and knowingly exposed Oscar Fernandez to COVID-19. He stopped work on April 10, after contracting the virus, and died on April 26. Mr. Fernandez is dead because of Tyson's incorrigible, willful and wanton disregard for workplace safety. Instead of educating employees about the dangers of COVID-19, Tyson warned them not to discuss the virus at work. (Petition at ¶ 70). Instead of encouraging sick employees to stay home, Tyson offered $500 bonuses for perfect attendance. (*Id.* at ¶ 69). Instead of pausing or slowing production, Tyson redirected hogs from a neighboring plant to the Waterloo Facility. (*Id.* at ¶ 54). And instead of providing personal protective equipment or implementing safety measures to protect employees, Tyson aggressively lobbied President Trump and Vice President Pence for liability protections. (*Id.* at ¶ 71).

*The Executive Order*

On April 28, 2020, President Trump issued an Executive Order "Delegating Authority Under the DPA with Respect to Food Supply Chain Resources During the National Emergency Caused by the Outbreak of COVID-19."[1] Notwithstanding Tyson's assertion to the contrary, President Trump neither mandated nor forgave Tyson's reprehensible conduct. Rather than compel any action, the order merely: (1) declared that meat and poultry in the food supply chain fall under Section 101(b) of the Defense Production Act; and (2) delegated the president's Defense Production Act authority over the food supply chain to Secretary of Agriculture Sonny Perdue.[2] The order further instructed Secretary Perdue to take all appropriate actions "to ensure America's meat and poultry processors continue operations" consistent with guidance from the CDC and

---

[1] *See* White House Presidential Actions, Executive Orders (April 28, 2020), *available at* https://www.whitehouse.gov/presidential-actions/executive-order-delegating-authority-dpa-respect-food-supply-chain-resources-national-emergency-caused-outbreak-covid-19/.
[2] *Id.*

OSHA.[3]  Subsequently, on May 5, 2020, Secretary Perdue issued a letter to meat processing companies declaring that meat processing plants "closed since Friday May 1, and without a clear timetable for near term resumption of operations, should submit written documentation of their operations and health and safety protocol" to the Department of Agriculture.[4]  Neither President Trump nor Secretary Perdue mandated Tyson to keep the Waterloo Facility open.

## LEGAL STANDARD

### A.  The removing party bears the burden of establishing federal jurisdiction.

"A defendant may remove a state law claim to federal court only if the action originally could have been filed there."  *In re Prempro Prods. Liab. Litig.,* 591 F.3d 613, 619 (8th Cir. 2010). "The party seeking removal to federal court bears the burden of demonstrating that removal was proper, even under the Federal Officer Removal Statute."  *Graves v. 3M Co*., No. CV 19-3094 (JRT/KMM), 2020 WL 1333135, at *3 (D. Minn. Mar. 23, 2020) (citing *Bor-Son Bldg. Corp. v. Heller*, 572 F.2d 174, 181 n.13 (8th Cir. 1978)).  "This burden is met by a substantial factual showing that supports candid, specific and positive allegations."  *Bd. of Cty. Commissioners of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 965 F.3d 792, 819 (10th Cir. 2020) (internal quotations and citations omitted).  "[A]ll doubts about federal jurisdiction must be resolved in favor of remand."  *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.,* 561 F.3d 904, 912 (8th Cir. 2009).

## ARGUMENT AND AUTHORITIES

### A.  Federal officer removal is improper because the Notice of Remand does not identify any federal directive that existed at the time Mr. Fernandez was working for Tyson, failed to establish causation between a directive and the company's tortious conduct, and failed to raise a colorable federal defense.

---

[3] *Id.*
[4] USDA Letter to Stakeholders (May 5, 2020), *available at* https://www.usda.gov/sites/default/files/documents/stakeholder-letters-covid.pdf.

A defendant corporation seeking federal officer removal must demonstrate that: (1) it was "acting under" the direction of a federal officer when it engaged in the allegedly tortious conduct; (2) there is a causal connection between the official authority and the defendant's actions; and (3) it has a "colorable" federal defense to state-law liability. *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1230 (8th Cir. 2012).

1.  **Tyson has not met its burden of providing candid, specific and positive allegations that it was acting under a federal officer when it engaged in tortious conduct giving rise to Plaintiff's claims.**

The Notice of Removal identifies two *arguable* federal directives: the April 28 Executive Order invoking the DPA and President Trump's March 16 "Coronavirus Guidelines" to employees. Both are insufficient for federal officer removal.

First, Plaintiff did not sue Tyson for actions taken *after* Mr. Fernandez died on April 26. Plaintiff sued Tyson for needlessly and knowingly exposing Mr. Fernandez to COVID-19 during the first half of April. It is therefore irrelevant whether or not the company was acting under a federal officer as of April 28.

Though Tyson relies on *E. Air Lines, Inc. v. McDonnell Douglas Corp*., 532 F.2d 957 (5th Cir. 1976) for the proposition that informal and indirect directives along with the mere threat of mandatory powers under the D.P.A. satisfy the "acting under" requirement of the federal officer removal statute, that case is entirely distinguishable from the matter at hand. *E. Air Lines* is a breach of contract case that does not address federal officer removal: the court did not consider whether informal directives satisfy the "acting under" requirement for federal officer removal. *E. Air Lines* is further distinguishable because the D.P.A. had already been invoked when the parties' contract dispute arose. Here, President Trump did not invoke the D.P.A. until after Plaintiffs' claims accrued. Finally, Tyson's argument that the threat of government intervention satisfies the "acting under" requirement for federal officer removal is contrary to established case law. *See*

*Mays v. City of Flint*, 871 F.3d 437, 447 (6th Cir. 2017) (disagreeing with argument that government's potential ability to intervene supports federal officer removal in the absence of actual intervention); *Bd. of Cty. Commissioners of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 965 F.3d 792, 819 (10th Cir. 2020) (disagreeing with argument that lease which granted government explicit right of control over mining and production rates supports federal officer removal absent evidence government actually directed company's drilling activities). The mere threat of government action does not satisfy the "acting under" requirement for federal officer removal.

Second, it is well settled that "a private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'" *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 143 (2007). Tyson's vague assertion that it "was in close contact with federal officials regarding continued operations as critical infrastructure"—without explaining what this means or how it relates to Mr. Fernandez's claims—is an insufficient basis for federal officer jurisdiction. *See Mayor & City Council of of Baltimore v. B.L. PLC*, 952 F.3d 452, 466 n.9 (4th Cir. 2020) ("[T]he lack of any specificity as to federal direction leaves us unable to conclude that the leases rise to the level of an unusually close relationship, as required by the first 'acting under' prong."); *Bd. of Cty. Commissioners of Boulder Cty.*, 965 F.3d at 819 (defendant's vague assertions of *potential* government control did not satisfy "burden of providing candid specific and positive allegations that it was acting under federal officers") (internal quotations and citation omitted)). Communicating and cooperating with federal regulators does not justify removal. *See Watson*, 551 U.S. at 143, 154 (neither "intense regulation" nor "compliance with federal laws, rules, and regulations" serve as a basis for federal officer removal).

Critical infrastructure or not, the Government did not *order* Tyson to make fraudulent representations to its employees, *prevent* the company from providing employees with personal

protective equipment, *prohibit* the company from implementing and enforcing social distancing measures, or *forbid* the company from implementing basic safety measures to protect its employees. Accordingly, federal officer removal is improper because Tyson was not "acting under" a federal officer when it needlessly and knowingly exposed Mr. Fernandez to COVID-19.

   2.   **Tyson failed to demonstrate that the acts for which it was sued occurred because of what it was asked to do by the Government.**

Even if Tyson could establish it was "acting under" a federal officer's direct and detailed control, it also must also prove a causal nexus between that directive and the actions for which it is being sued. The causal nexus prong is satisfied when the defendant establishes that the lawsuit "has arisen out of the acts done by him under color of federal authority and in enforcement of federal law." *Mesa v. California*, 489 U.S. 121, 131-32 (1989). In other words, "this element requires that the 'gravamen of the claim against [the defendant] occur while it acted under color of federal authority.'" *Brokaw v. Boeing Co*., 137 F.Supp.3d 1082, 1096 (N.D. Ill. 2015) (quoting *Ruppel v. CBS Corp.,* 701 F.3d 1176, 1181 (7th Cir. 2012)). As the Seventh Circuit has explained, "a bona fide federal officer could not remove a trespass suit that occurred while he was taking out the garbage—there must be a 'causal connection between the charged conduct and asserted official authority.'" *Ruppel,* 701 F.3d at 1181 (quoting *Jefferson Cnty., Ala. v. Acker,* 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999)). Thus, in order to satisfy this requirement, Tyson must prove that if it needlessly and knowingly infected Mr. Fernandez with COVID-19 because of a federal directive.

Instead, Tyson asserts that it did not shut down the Waterloo Facility because it was operating the facility as critical infrastructure at the behest of the federal government. (Doc. 1 at 10). But Plaintiff did not sue Tyson (or any other Defendant) for failing to shut down the Facility. Plaintiff sued Tyson and its agents for fraudulent misrepresentation and gross negligence. Plaintiff

specifically contends that Tyson's executives and managers violated their duty through twenty-nine acts and omissions, none of which include failing to shut down the facility.  (Petition at ¶¶ 109 (a)-(cc), 125 (a)-(cc)).  In fact, the Petition only references Tyson's "prolonged refusal to temporarily close down" the facility as "evidence of Tyson's incorrigible, willful and wanton disregard for workplace safety and culpable state of mind." (*Id.* at ¶¶ 100, 116, 140).  Hence, the only action that Tyson claims to have taken at the direction of a federal officer (keeping the facility open) does not serve as a basis for Plaintiff's claims. Tyson has failed to demonstrate that the acts for which it was sued occurred because of what it was asked to do by the Government**.**

### 3.    Tyson does not have a colorable federal defense.

Federal officer removal "must be predicated on the allegation of a colorable federal defense." *Mesa*, 489 U.S. at 129.  A colorable federal defense "constitutes the federal law under which the action against the federal officer arises for Art. III purposes." *Id.* at 136.  This is required because the statute itself does not create a federal question, but "merely serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged." *Id.*  Here, Tyson asserts two colorable federal defenses: express preemption under the Federal Meat Inspection Act (FMIA); and ordinary preemption under President Trump's April 28 Executive Order and the Defense Production Act.[5]  Neither constitutes a colorable federal defense.

"An asserted federal defense is not colorable if it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." *Latiolais v. Huntington Ingalls, Inc*., 951 F.3d 286, 297 (5th Cir. 2020) (internal quotations and citations omitted).  Indeed, the Supreme Court has explained, "a claim invoking federal-question jurisdiction…is not

---

[5] Doc. 1 at 8.

colorable…if it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous." *Arbaugh v. Y&H Corp.* 546 U.S. 500, 513 n.10 (2006). Hence, an implausible and "immaterial" federal defense that is raised "solely for the purpose of obtaining jurisdiction" is not colorable. *Id.*

Tyson's assertion that the FMIA preempts Plaintiff's common law fraudulent misrepresentation and personal injury claims is entirely implausible, wholly insubstantial, absurdly frivolous—and plainly made for the sole purpose of obtaining federal jurisdiction. The Act's express preemption clause provides:

> **Marking, labeling, packaging, or ingredient requirements** in addition to, or different than, those made under this chapter **may not be imposed by any State**…**This chapter shall not preclude any State**…**from** making requirements or **taking other action**, consistent with this chapter, **with respect to any other matters** regulated under this chapter.

21 U.S.C. § 678 (emphasis added). The Supreme Court has explained that this provision only preempts States from regulating "the inspection, handling, and slaughter of livestock for human consumption." *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 455 (2012). It does <u>not</u> preempt States from regulating "other matters." *Id.* at 467, n.10. As a result, "state laws of general application (workplace safety regulations, building codes, etc.) will usually apply to slaughterhouses." *Id.* Because this lawsuit does not seek to regulate Tyson's inspection, handling or slaughter of livestock, Plaintiff's common law tort claims are not preempted by the FMIA.

A cursory Westlaw search returns innumerable personal injury and workers' compensation cases filed and litigated in state courts on behalf of meatpacking workers injured in slaughterhouses; whereas an extensive search returned zero cases ruling that the FMIA preempts a meatpacking employee's personal injury or workers' compensation claim. Tyson must provide case law to support its argument that Plaintiff's common law claims are preempted by the FMIA.

Finally, preemption under the April 28 Executive Order/Defense Production Act is not a colorable defense because Mr. Fernandez contracted COVID-19, stopped working and died *before* President Trump invoked the DPA. The Executive Order and DPA are wholly irrelevant to Plaintiff's claims. Tyson has not raised a colorable federal defense.

**B.      Removal is not warranted on the basis of federal question jurisdiction.**

Federal "jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987). "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 314 (2005).

Here, Plaintiffs' causes of action are made entirely in terms of state law—specifically, for Iowa common law negligence and fraudulent misrepresentation. Thus, for federal question jurisdiction to arise, **resolution of Plaintiffs' state law claims must depend necessarily on a disputed and substantial question of federal law**, which a federal forum may entertain without disturbing the balance of federal and state judicial responsibilities. *Grable & Sons Metal Prods.* 545 U.S. at 313. Because Plaintiffs' common law tort claims do not create a substantial question of federal law, removal based on federal question jurisdiction is improper.

**1.      Tyson's attempt to transform this action into one arising under federal law violates the well-pleaded complaint rule.**

The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule. *Caterpillar*, 482 U.S. at 392. Here, Plaintiffs' Petition pleads only state law claims, none of which depend necessarily on a disputed and substantial question of federal law. While Tyson argues the "Petition raises substantial and disputed issues of federal law under the

Defense Production Act" and "implicates federal imperatives of the highest and broadest importance," [6] removal is not appropriate under the well-pleaded complaint rule because these federal issues are not raised or at issue in Plaintiffs' claims. The "presence of a federal question…in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule." *Id.* at 399. Tyson cannot "merely by injecting a federal question into" Plaintiffs' state law claims, "transform the action into one arising under federal law." *Id.*

### 2. The DPA is irrelevant to Plaintiffs' claims.

Because Ms. Buljic, Mr. Garcia, and Mr. Ayala contracted COVID-19 and stopped working weeks before President Trump invoked the DPA, Plaintiffs' claims do not depend, in any way, on the interpretation or application of the DPA. It follows, therefore, that federal question jurisdiction does not exist. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vactation Trust*, 463 U.S. 1, 13 (1983) (It is not enough that "federal law becomes relevant only by way of a defense to an obligation created entirely by state law."). Tyson's assertion that Plaintiffs' state law claims cannot be resolved without interpreting a federal statute that was invoked *after* Plaintiffs' claims accrued is objectively unreasonable.

### 3. Plaintiffs' reference to federal guidance and regulations does not confer federal question jurisdiction.

Tyson also appears to argue that federal question jurisdiction is appropriate because Plaintiffs' Petition references Defendants' failure to comply with CDC guidance and OSHA regulations.[7] It is well settled, however, that the **"mere presence of a federal issue in a state cause of action does not confer federal question jurisdiction."** *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986) (emphasis added). Indeed, Courts have uniformly ruled that

---

[6] *Id.* at 2, 10.
[7] *Id.* at 10.

a plaintiff's reference to federal regulations within the context of state law negligence claims is insufficient to confer federal question jurisdiction.  *See, e.g., Bowler v. Alliedbarton Sec. Servs., LLC*, 123 F. Supp. 3d 1152, 1158 (E.D. Mo. 2015) ("mere reference" to federal regulations in a state-law claim "is not sufficient to create federal question jurisdiction"); *Daniels v. Potomac Elec. Power Co.*, 789 F. Supp. 2d 161, 163 (D. D.C. 2011) ("Because OSHA does not provide a federal cause of action, and because alleged violations of OSHA were asserted by plaintiff simply to prove elements of a state common law claim, the Court concludes that [plaintiff's cause of action] does not arise under federal law."); *I.S. v. Washington University*, 2011 WL 2433585, *5 (E.D. Mo. Jun. 14, 2011) (no federal question jurisdiction where state law claim for negligence per se referred to HIPAA statute); *Goforth v. Nevada Power Co.*, 101 F. Supp. 3d 975, 979 (D. Nev. 2015) (finding no federal question jurisdiction "because proof of a violation of an OSHA regulation is not an essential element of any of Plaintiffs' claims").  Merely referencing federal regulations within the context of state law negligence claims does not confer federal question jurisdiction.

Here, Plaintiffs referenced CDC guidance and OSHA regulations merely as standards upon which to measure Defendants' negligence.  Plaintiffs do not claim relief under CDC guidance or OSHA regulations, but <u>solely</u> under Iowa tort law.  Consequently, evidence of Defendants compliance with these federal standards is merely one of many factors for a jury to consider in assessing Defendants' alleged breach of duty in this case.  This is not enough to confer federal question jurisdiction.  "For federal courts to have jurisdiction, the state law claim must *turn on* an 'actually disputed and substantial' issue of federal law." *Bender v. Jordan*, 623 F.3d 1128, 1130 (D.D.C. 2010) (quoting *Grable,* 545 U.S. at 314) (emphasis added).  Because Plaintiffs' state law claims do not turn on interpretation of CDC guidance or OSHA regulations, removal is not warranted on the basis of federal question jurisdiction.

**C<small>ONCLUSION</small>**

Defendants have failed to satisfy their burden of establishing federal jurisdiction. Under these circumstances, there is no basis for finding jurisdiction under the Federal Officer Removal Statute, no basis for finding federal question jurisdiction, and consequently—no basis for removing this case from state to federal court. Plaintiffs respectfully urge the Court to Grant Plaintiffs' Motion for Remand.

DATED this 2nd day of November 2020.

>  */s/ Thomas P. Frerichs*
> Thomas P. Frerichs (AT0002705)
> Frerichs Law Office, P.C.
> 106 E. 4th Street, P.O. Box 328
> Waterloo, IA 50704-0328
> 319.236.7204 / 319.236.7206 (fax)
> tfrerichs@frerichslaw.com
>
> John J. Rausch
> Rausch Law Firm, PLLC
> 3909 University Ave., P.O. Box 905
> Waterloo, IA 50704-0905
> 319.233.3557 / 319.233.3558 (fax)
> rauschlawfirm@dybb.com
>
> Mel C. Orchard, III (admitted *pro hac vice*)
> G. Bryan Ulmer, III (admitted *pro hac vice*)
> Gabriel Phillips (admitted *pro hac vice*)
> The Spence Law Firm, LLC
> 15 S. Jackson Street
> P.O. Box 548
> Jackson, WY 83001
> 307.337.1283 / 307.337.3835 (fax)
> orchard@spencelawyers.com
> ulmer@spencelawyers.com
> phillips@spencelawyers.com
>
> *Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of November 2020, a true and correct copy of the above and foregoing Plaintiff's Brief in Support of Motion to Remand was served via CM/ECF Electronic Transmission on the following:

> Kevin J. Driscoll
> **Finley Law Firm, P.C.**
> 699 Walnut Street, Suite 1700
> Des Moines, Iowa 50309
> Email: kdriscoll@finleylaw.com
>
> Christopher S. Coleman
> **Perkins Coie LLP**
> 2901 N. Central Avenue
> Suite 2000
> Phoenix, Arizona 85012
> Email: CColeman@perkinscoie.com
>
> Mary Gaston
> **Perkins Coie LLP**
> 1201 Third Avenue
>  Suite 4900
> Seattle, Washington 98101-3099
> Email: MGaston@perkinscoie.com
>
> *Attorneys for Defendants Tyson Foods, Inc.*
> *and Tyson Fresh Meats, Inc.*

_/s/ Thomas P. Frerichs_____
Thomas P. Frerichs
Frerichs Law Office, P.C.