IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

|  |  |
|---|---|
| OSCAR FERNANDEZ, individually and as Administrator of the Estate of Isidro Fernandez, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) No. 6:20-cv-02079-KEM |
| TYSON FOODS, INC., et. al., | ) ) |
| Defendants. | ) ) ) |

BRIEF OF *AMICUS CURIAE* PUBLIC CITIZEN
IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

Jay M. Smith, AT0007387
SMITH & McELWAIN LAW OFFICE
505 Fifth Street, Suite 530
P.O. Box 1194
Sioux City, Iowa 51102
(712) 255-8094
smitmcel@aol.com

Adam R. Pulver (pro hac vice pending)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

*Counsel for Amicus Curiae Public Citizen*

November 4, 2020

**INTRODUCTION**

In April 2020, as rates of COVID-19 in meatpacking plants across the country rose, representatives of the meatpacking industry requested that the President issue an executive order that would compel them to continue production at all costs.[1] The President, however, did not issue such an executive order. Rather, he issued an order delegating his authority under the contract prioritization scheme of the Defense Production Act (DPA) to the Secretary of the Department of Agriculture (USDA) and directing the Secretary to take such action as he deemed appropriate under that scheme.[2]

Contrary to the argument in Defendants' notice of removal, nothing in the Executive Order directed Tyson Foods or any other Defendant (collectively "Tyson") to do anything, and nothing in that Order preempts negligence and fraudulent misrepresentation claims under Iowa law. Even aside from Plaintiff's point that the April 28, 2020, Order has no bearing on a case that arose before that date, *see* Pl.'s Br. in Supp. of Mot. to Remand (ECF 22-1) at 4, 9, neither the Executive Order nor any subsequent action by USDA required Tyson to do, or not do, anything pertinent to this case. Tyson was thus not acting at the "direction" of any federal officer, and nothing in the order made Tyson's compliance with state law impossible. Moreover, the DPA's statutory scheme leaves room for the application of state tort and other laws, as recognized by contemporaneous statements of USDA relating to the continuing applicability of state and local public health laws.

---

[1] *See* Sky Chadde, Kyle Bagenstose, & Rachel Axon, "A week before Trump's order protecting meat plants, industry sent draft language to feds," USA Today, Sept. 14, 2020, https://www.usatoday.com/story/news/2020/09/14/covid-19-meat-plants-sought-feds-protection-local-health-depts/5797051002/.

[2] *See* Executive Order 13917, Delegating Authority Under the Defense Production Act With Respect to Food Supply Chain Resources During the National Emergency Caused by the Outbreak of COVID-19, 85 Fed. Reg. 26,313 (May 1, 2020) (attached hereto as Exhibit A).

**INTEREST OF AMICUS CURIAE**

Amicus Curiae Public Citizen, a non-profit advocacy organization with members and supporters in every state, appears before Congress, agencies, courts, and state and local governments on a wide range of issues. Public Citizen works for enactment and enforcement of laws to protect consumers, workers, and the public, and promotes open and fair governmental processes. Consistent with its decades of work to advance public health and safety, Public Citizen works to protect injured individuals' access to the civil justice system to hold companies accountable for legal wrongs, including to protect access to state-law remedies. Public Citizen is concerned that, if accepted, Defendants' erroneous argument that Executive Order 13917 has preemptive effect could nullify a range of state and local protections for workers and consumers, leaving them with no avenue for seeking a remedy for injuries caused by wrongdoing.

**ARGUMENT**

In their Notice of Removal, Tyson maintains that it continued to operate without adopting adequate health and safety precautions for workers "at the direction of federal officials" and, on this basis, it invokes the removal provision of 28 U.S.C. § 1442(a)(1). Notice of Removal at 8. "Four elements are required for removal under § 1442(a)(1): (1) a defendant has acted under the direction of a federal officer, (2) there was a causal connection between the defendant's actions and the official authority, (3) the defendant has a colorable federal defense to the plaintiff's claims, and (4) the defendant is a 'person,'" within the meaning of the statute." *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012). This case fails to satisfy the first three of these elements. Tyson's argument to the contrary is based on an erroneous characterization of the April 28 Executive Order.

## I. Defendants Were Not "Acting Under the Direction of a Federal Officer."

A private entity only satisfies the "acted under" requirement of § 1442(a)(1) when its actions "involve an effort to *assist,* or to help *carry out,* the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.,* 551 U.S. 142, 152 (2007). "It is not enough that a private person or entity merely operate in an area directed, supervised and monitored by a federal regulatory agency or other such federal entity." *Jacks*, 701 F.3d at 1230 (citing *Watson*, 551 U.S. at 145). Rather, to invoke § 1442(a)(1), the defendant must show more specifically that the "government supervised or controlled the manufacturing process." *Burford v. Monsanto Co.*, No. 4:16CV536, 2017 WL 1315800, at *4 (E.D. Mo. Apr. 10, 2017).

Executive Order 13917 did not create, or even purport to create, any system of supervision or control. The Executive Order directs or delegates to the Secretary of Agriculture the authority to take further action that he deems appropriate, pursuant to the contract prioritization scheme of the DPA. The Executive Order imposes no requirements or prohibitions on plant operators.

The Executive Order is short and straightforward. Section 1 of the Executive Order directs the Secretary of Agriculture to "take all appropriate action under [DPA, 50 U.S.C. § 4511(b)] to ensure that meat and poultry processors continue operations consistent with the guidance for their operations jointly issued by the CDC and OSHA." 85 Fed. Reg. at 26,313 (May 2, 2020). Section 2(a) delegates to the Secretary certain authority to prioritize contracts "to promote the national defense over performance of any other contracts or orders, to allocate materials, services and facilities as deemed necessary or appropriate to promote the national defense, and to implement" the DPA. *Id.* at 26,314. Section 2(b) similarly directs the Secretary to use his authority under the DPA "to determine the proper nationwide priorities and allocation of all the materials, services, and facilities necessary to ensure the continued supply of meat and poultry." *Id.* Finally, Section

2(c) authorizes the Secretary to issue orders, rules, and regulations "as may be necessary to implement this order." *Id.*

Each of the Executive Order's directions to the Secretary of Agriculture relate to the President's authority to prioritize the performance of certain contracts over others, pursuant to Title I of the Defense Production Act, 50 U.S.C. §§ 4511–4518. As the nonpartisan Congressional Research Service has explained:

> The priority performance authority allows the federal government to ensure the timely availability of critical materials, equipment, and services produced in the private market in the interest of national defense, and to receive those materials, equipment, and services through contracts before any other competing interest.

Cong. Research Serv., R43767, "The Defense Production Act of 1950: History, Authorities, and Considerations for Congress," (Mar. 2, 2020), https://crsreports.congress.gov/product/pdf/R/R43767. For example, pursuant to the authority delegated under the Executive Order, the Secretary could order a plant to fulfill contracts with the United States before fulfilling other contracts. Here, not only did the Order impose no obligations on Tyson, but Tyson has offered no evidence that the Secretary actually *did* prioritize any Tyson contracts over others, or that Isidro Fernandez was working on any such contracts.[3]

Notably, the North American Meat Institute, of which Tyson is a member, drafted an executive order that it sent to the Administration before the President issued Executive Order 13917. That draft suggested language "order[ing] that critical infrastructure food companies

---

[3] The "stakeholder" letter that Defendants cite only directed "plants contemplating reductions of operations or recently closed since Friday May 1, and without a clear timetable for near term resumption of operations" to "submit written documentation of their operations and health and safety protocol developed based on the CDC/OSHA guidance to USDA." *See* May 5, 2020 Letter from Sec. Perdue, https://www.usda.gov/sites/default/files/documents/stakeholder-letters-covid.pdf. The statutory or regulatory authority for this instruction is unclear, and the instruction does not relate to the contract-rating scheme of Title I of the DPA.

continue their operations to the fullest extent possible both during and after the COVID-19 crisis subsides." *See* Chadde, Bagenstose, & Axon, *supra* (reproducing draft executive order submitted by North American Meat Institute). That language was *not* included in the Executive Order that the President issued. Instead, the President's Executive Order does not order the companies to do anything at all.

## II. There is No Colorable Preemption Defense Based on the Executive Order or the Defense Production Act.

Tyson argues that it has a "colorable" defense to Plaintiff's claims on the grounds that Iowa law "conflicts with the President's express directives under the DPA," and is thus preempted. Notice of Removal (ECF 1) at 12. Under well-established preemption principles, and under the Eighth Circuit's interpretation of the DPA, this argument lacks merit.

Conflict preemption is a form of implied preemption, and "without clear congressional intent there is a general presumption against finding implied preemption." *Mo. Bd. of Exam'rs for Hearing Instrument Specialists v. Hearing Help Express, Inc.*, 447 F.3d 1033, 1035 (8th Cir. 2006). Conflict preemption comes in two forms: impossibility preemption and obstacle preemption. Impossibility preemption arises "when compliance with both federal and state regulations is a physical impossibility." *Lefaivre v. KV Pharm. Co.*, 636 F.3d 935, 939 (8th Cir. 2011) (quoting *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 596, 605 (1991)). Obstacle preemption exists "when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quoting *Wis. Pub. Intervenor*, 501 U.S. at 605). Here, there is no plausible argument for preemption under either theory.

5

### A. Compliance with both Executive Order 13917 and Iowa tort law is not "impossible."

As discussed above, Executive Order 13917 directs or delegates authority under Title I of the DPA to the Secretary of Agriculture, without imposing any obligations or prohibitions on Tyson. And as noted above, there is no evidence that the Secretary prioritized certain Tyson contracts over others, or that Isidro Fernandez was working on any such contracts. Moreover, there is no reason why fulfilling certain contracts over others would make it impossible for a plant to comply with its state-law duties of care under Iowa's negligence and fraudulent misrepresentation law. Thus, there is no colorable basis to assert "impossibility" preemption.

### B. Enforcement of Iowa law on negligence and fraudulent misrepresentation would not stand as an obstacle to the contract prioritization scheme of the DPA, as invoked by Executive Order 13917.

For many of the same reasons that it is not impossible to comply with Iowa tort law and the Executive Order, "obstacle" preemption does not apply. Putting aside that Tyson was not complying with a priority order at the time of the events at issue (or at any other time), neither the DPA nor Executive Order 13917 requires the production of meat at any cost. *Cf. Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 222 (1983) (declining to find state law preempted by Atomic Energy Act, since purpose of Act did not did not require "the promotion of nuclear power … to be accomplished at all costs"); *Wuebker v. Wilbur-Ellis Co.*, 418 F.3d 883, 888 (8th Cir. 2005) (declining to find tort law claims preempted by Federal Insecticide, Fungicide, and Rodenticide Act and noting doubt "that it was Congress's intention to foster compliance with pesticide labels 'at all costs'" (citation omitted)). To the contrary, the DPA and case law interpreting it, as well as contemporaneous statements by USDA, indicate otherwise.

The DPA contains an explicit immunity clause, section 707, which provides that, "No person shall be held liable for damages or penalties for any act or failure to act resulting directly

or indirectly from compliance with a rule, regulation, or order issued pursuant to [the DPA]." 50 U.S.C. § 4557. Courts have uniformly rejected such arguments that this provision creates a defense to state-law tort claims and federal-law environmental claims arising out of work performed in connection with DPA-prioritized contracts. *See, e.g.*, *United States v. Vertac Chem. Corp.*, 46 F.3d 803, 812 (8th Cir. 1995). In reasoning explicitly adopted by the Eighth Circuit in *Vertac*, *id.*, the Federal Circuit has explained that section 707 solely "provid[es] a defense for a DPA contractor against a suit by a non-government customer in the event that the DPA contractor is forced to breach another contract to fulfill the government's requirements." *Hercules Inc. v. United States*, 24 F.3d 188, 203 (Fed. Cir. 1994). Finding that the provision had no bearing on tort actions brought by veterans against the manufacturers of Agent Orange, the court further explained:

> [T]he immunity from suit provided by section 707 does not extend to tort suits in which it is alleged that the item produced by the DPA contractor is inherently unsafe to users. Rather, we conclude that to the extent relevant here, the intended protection of section 707 is analogous to that provided under the common-law doctrine of impossibility of performance, which excuses delay or nonperformance of a contract when the agreed upon performance has been rendered "commercially impracticable" by an unforeseen supervening event not within the contemplation of the parties at the time the contract was formed.

*Id.* at 204 (citations omitted). *Accord E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 997 (5th Cir. 1976) (provision merely codifies impossibility defense); *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 844–45 (E.D.N.Y. 1984) (defense does not apply to negligence claims).

Congress's decision, in crafting the DPA, to include a provision narrowly preempting state breach of contract claims and no other claims resolves the obstacle preemption inquiry. "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 599–600 (8th Cir. 2005) (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517 (1992)) ; *see also*

7

*Jones v. Vilsack*, 272 F.3d 1030, 1037 (8th Cir. 2001); *Heimlicher v. Steele*, 615 F. Supp. 2d 884, 913 (N.D. Iowa 2009). As the federal government argued in *Vertac*, "allowing a government contractor to violate the laws with impunity, so long as it is performing a rated contract" would be an "absurd result." 46 F.3d at 812 (characterizing government's argument). Again putting aside that Tyson has not shown that Isidro Fernandez was working under a government contract at the relevant time, the same is true here.

Furthermore, Executive Order 13917 does not independently preempt Plaintiff's claims. Even if the President had authority under the Constitution to oust state law by fiat, the only concrete action stated in the Executive Order is the delegation to the Secretary of Agriculture of authority to implement the DPA, as explained above. Because state tort law poses no obstacle to accomplishing the purposes of the DPA, it cannot pose an obstacle to an order delegating authority to implement the DPA. Notably, USDA has itself acknowledged that the Executive Order does not displace state and local regulation of meatpacking facilities. On a website created shortly after the Executive Order, USDA included the following question and answer:

> **Q: Can a county health department or state government shut down a [Food Safety Inspection Service (FSIS)]-regulated establishment?**
>
> A: Yes, and FSIS will follow state and local health department decisions.

USDA, Coronavirus Disease (COVID-19), Food Supply Chain, https://www.usda.gov/coronavirus/food-supply-chain#food-safety. If shutdowns of meatpacking plants pursuant to state and local public health laws are not obstacles to the operation of the Executive Order and/or DPA, it is difficult to see how state-law claims seeking damages for injuries incurred by a worker at the plant could be.

## CONCLUSION

For the foregoing reasons and those explained by Plaintiff, Plaintiff's motion to remand should be granted.

Dated: November 4, 2020

Respectfully submitted,

/s/ Jay M. Smith
Jay M. Smith   AT0007387
SMITH & McELWAIN LAW OFFICE
505 5th Street, Suite 530
P.O. Box 1194
Sioux City, Iowa 51102
(712) 255-8094
smitmcel@aol.com

Adam R. Pulver (pro hac vice pending)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

*Counsel for Amicus Public Citizen*

# CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of November 2020, a true and correct copy of the above and foregoing Brief of Amicus Curiae Public Citizen In Support of Plaintiff's Motion to Remand was served via CM/ECF Electronic Transmission on the following:

Thomas P. Frerichs
Frerichs Law Office, P.C.
106 E. 4th Street, P.O. Box 328
Waterloo, IA 50704-0328

Mel C. Orchard, III
G. Bryan Ulmer, III
Gabriel Phillips
The Spence Law Firm, LLC
15 S. Jackson Street
P.O. Box 548
Jackson, Wyoming 83001

John J. Rausch
Rausch Law Firm, PLLC
3909 Univeristy Ave., P.O. Box 905
Waterloo, IA 50704-0905

*Attorneys for Plaintiffs*

Kevin J. Driscoll
Finley Law Firm, P.C.
699 Walnut Street, Suite 1700
Des Moines, Iowa 50309

Mary Gaston
Perkins Coie LLP
1201 Third Avenue
Suite 4900
Seattle, Washington 98101-3099

Christopher S. Coleman
Perkins Coie LLP
2901 N. Central Avenue
Suite 2000
Phoenix, Arizona 85012

*Attorneys for Defendants*

                                         /s/ Jay M. Smith
                                         Jay M. Smith