**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION** ~~IN THE IOWA DISTRICT COURT FOR BLACK HAWK~~

~~COUNTY~~

|  |  |
|---|---|
| OSCAR FERNANDEZ INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF ISIDRO FERNANDEZ, <br><br> PLAINTIFF, <br><br> V. <br><br> TYSON FOODS, INC., TYSON FRESH MEATS, INC., JOHN H. TYSON, NOEL W. WHITE, DEAN BANKS, STEPHEN R. STOUFFER, TOM BROWER, ~~MARY A. OLEKSIUK, ELIZABETH CROSTON,~~ TOM HART, ~~HAMDIJA BEGANOVIC, JAMES COOK, RAMIZ MUHELJIC, GUSTAVO CABAREA, PUM PISNG, ALEX BUFF, WALTER CIFUENTES, MUWI HLAWNCEU,~~ CODY BRUSTKERN, ~~, MARK SMITH, AND JOHN/JANE DOES 1-10,~~ JOHN CASEY, AND BRET TAPKEN. ~~TYSON FOODS, INC., TYSON FRESH MEATS, INC., JOHN H. TYSON, NOEL W. WHITE, DEAN BANKS, STEPHEN R. STOUFFER, TOM BROWER, MARY A. OLEKSIUK, ELIZABETH CROSTON, TOM HART, HAMDIJA BEGANOVIC, JAMES COOK, RAMIZ MUHELJIC, MISSIA ABAD BERNAL, AND JOHN/JANE DOES 1-10,~~ <br><br> DEFENDANTS. | ~~Civil~~ Case No. ~~_____~~ 6:20-cv-02079-LRR-KEM |

~~PETITION AT LAW AND DEMAND FOR JURY TRIAL~~ **FIRST AMENDED**

**COMPLAINT**

### INTRODUCTION

1.     This case arises from Tyson Foods' fraudulent misrepresentations, gross negligence, and incorrigible, willful and wanton disregard for worker safety at its pork processing facility in Waterloo, Iowa (the "Waterloo Facility"). Despite an uncontrolled Covid-

19 outbreak, Tyson required its employees to work long hours in cramped conditions. Moreover, despite the danger of COVID-19, Tyson failed to provide appropriate personal protective equipment and failed to implement sufficient social distancing or safety measures to protect workers from the outbreak. As a result, Isidro Fernandez and more than 1,000 other Tyson employees were infected with COVID-19 at the Waterloo Facility.

**PARTIES**

2. Plaintiff Oscar Fernandez is the duly appointed Administrator of the Estate of his deceased father, Isidro Fernandez.

3. At all relevant times, Isidro Fernandez was a Tyson Foods employee working at the Waterloo Facility. He died on April 26, 2020 from complications of COVID-19.

4. Plaintiff's injuries arose out of and in the course of Isidro Fernandez's employment with Tyson Foods.

### *Defendant Tyson Foods*

5. Defendant Tyson Foods, Inc. is the largest meat processor in the United States.

6. Tyson Foods, Inc. is a Delaware Corporation, with its principal place of business in Springdale, Arkansas.

7. As a corporation, Tyson Foods, Inc. can act only through its agents, including its employees, officers, and directors.

8. Tyson Foods, Inc. is vicariously liable for its agents' acts and omissions within the course and scope of their agency.

9. Defendant Tyson Fresh Meats, Inc. is a Delaware Corporation, with its principal place of business in Springdale, Arkansas.

10. As a corporation, Tyson Fresh Meats can act only through its agents, including its employees, officers, and directors.

11.     Tyson Fresh Meats is vicariously liable for its agents' acts and omissions within the course and scope of their agency.

12.     Tyson Fresh Meats is a wholly owned subsidiary of Tyson Foods, Inc. (collectively "Tyson Foods" or "Tyson").

***Executive Defendants***

13.     Defendant John H. Tyson is the Chairman of Tyson Foods, Inc.

14.     Defendant Noel W. White is the Chief Executive Officer of Tyson Foods, Inc.

15.     Defendant Dean Banks is the President of Tyson Foods, Inc.

16.     Defendant Stephen R. Stouffer is the President of Tyson Fresh Meats, Inc.

17.     Defendant Tom Brower is Senior Vice President of Health and Safety for Tyson Foods, Inc.

17. 18.  Hereinafter John H. Tyson, Noel W. White, Dean Banks, Stephen R. Stouffer, and Tom Brower, will be collectively referred to as the "Executive Defendants."

18.     Defendant Mary A. Oleksiuk is the Chief Human Resources Officer of Tyson Foods, Inc.

19.     Defendant Elizabeth Croston is Executive Communications Manager for Tyson Fresh Meats.

***Supervisory Defendants***

19.     Defendant Tom Hart is the plant manager of the Tyson Waterloo Facility.  He is required to be familiar with all aspects of the Waterloo Facility and to identify potential safety hazards.

20.     Defendant Bret Tapken is the Safety Lead of the Tyson Waterloo Facility.  He is required to be familiar with all aspects of the Waterloo Facility and to identify potential safety hazards.

21.    Defendant Hamdija Beganovic is the supervisor of the Tyson Waterloo Facility.

22.    Defendant James Cook is the human resources director of the Tyson Waterloo Facility.

23.    Defendant Ramiz Muheljic is a general supervisor at the Tyson Waterloo Facility.

24.    On information and belief, Defendants Missia Abad Bernal is a supervisor at the Tyson Waterloo facility and was Mr. Fernandez's direct supervisor.

21.    Defendants Cody Brustkern and John Casey hold upper-level management positions at the Tyson Waterloo Facility.

22.    Hereinafter Tom Hart, Bret Tapken, Cody Brustkern, and John Casey will be collectively referred to as the "Supervisory Defendants."

23.    The Supervisory Defendants are required to be familiar with all aspects of the Waterloo Facility and to identify potential safety hazards.

25.    Defendants John/Jane Does 1-10 are any unnamed managers or supervisors at the Tyson Waterloo Facility responsible for Plaintiff's injuries.  Because Mr. Fernandez is deceased, the identifies of his direct supervisors and the full chain of command at the Waterloo Facility are unknown at this time.

**JURISDICTION AND VENUE**

26.24.  The District Court for Black Hawk County, Iowa This Court has jurisdiction over the Defendants because the acts and omissions giving rise to the Plaintiff's claims occurred in Black Hawk County, Iowa.[1]

27.25.  Plaintiff certifies, pursuant to IA Code § 619.18, that this action meets applicable jurisdictional requirements for amount in controversy.

---

[1] Plaintiff filed this action in the District Court for Black Hawk County, Iowa and Defendants improperly removed

28.26.  Venue is proper under IA Code § 616.18 because Plaintiff sustained injuries and damages in Black Hawk County.

### FACTS COMMON TO ALL CAUSES OF ACTION

***The Pandemic***

29.27.  COVID-19 is an infectious respiratory disease caused by a novel coronavirus (hereinafter "COVID-19" or "the virus").

30.28.  COVID-19 is highly contagious.

31.29.  COVID-19 can result in serious, long-term health complications and has resulted in more than 123,000 reported deaths in the United States to date.

32.30.  Among these serious health complications, COVID-19 can cause inflammation in the lungs, clogging the air sacs in the lungs, limiting the body's oxygen supply and blood clots, organ failure, liver damage, intestinal damage, heart inflammation, neurological malfunction, and acute kidney disease.

33.31.  The virus primarily spreads from person to person through respiratory droplets produced when an infected person coughs or sneezes.

34.32.  Spread is more likely when people are in close contact with one another (i.e., within 6 feet).

35.33.  The virus can be spread by people who are asymptomatic, pre-symptomatic, or mildly symptomatic.

36.34.  Distinctive factors that affect workers' risk for exposure to COVID-19 in meat processing facilities include distance between workers, duration of contact and type of contact between workers.

35.  The best way to prevent infection and illness is to avoid being exposed to the virus.

36.     The first known COVID-19 outbreak occurred in Wuhan, Hubei province, People's Republic of China ("China").

37.     Tyson Foods has extensive operations and business interests in China, and one of its subsidiaries operates a facility in Hubei province.

38.     Tyson Foods has been focused on COVID-19 since January 2020 when it formed a "company coronavirus task force." Tyson formed this task force after observing the impact of COVID-19 on its China operations.

37.39. In January, nearly all of Tyson's operations in China were affected by the COVID-19 outbreak. By February, Tyson halted operations at some facilities in China and reduced operations at others.

38.40. On January 11, 2020, Chinese state media reported its first known death from COVID-19; Japan, South Korea, and Thailand reported confirmed cases by January 20, 2020; and the United States reported its first case on January 21, 2020.

39.41.  On January 31, the United States Department of Health and Human Services declared a national public health emergency.

40.42.  On March 8, three COVID-19 cases were reported in Iowa.

41.43.  On March 9, Iowa Governor Kim Reynolds issued a Proclamation of Disaster Emergency in response to the COVID-19 outbreak.

42.44.  On March 11, the World Health Organization declared the COVID-19 outbreak a global pandemic.

43.45.  On March 13, President Donald Trump declared a National Emergency in response to the COVID-19 outbreak.

44.46. On or about March 13, Tyson Foods suspended all U.S. commercial business travel, forbid all non-essential visitors from entering Tyson offices and facilities, and mandated that all non-critical employees at its U.S. corporate office locations work remotely.

45.47. On March 17, Governor Reynolds proclaimed a State of Public Health Disaster Emergency for the State of Iowa.

46.48. On March 17, COVID-19 cases were confirmed in Black Hawk County.

47.49. On March 24, President Trump approved a major disaster declaration for the State of Iowa in response to the COVID-19 outbreak.

***COVID-19 Outbreak at the Waterloo Facility***

50. The Waterloo Facility is Tyson's largest pork plant in the United States. The facility employs approximately 2,800 workers who process approximately 19,500 hogs per day.

48.51. By late-March, the Executive Defendants and Supervisory Defendants were aware that COVID-19 was spreading through the Waterloo Facility.

49.52. Tyson Foods has been focused on COVID-19 since January when it formed a "company coronavirus task force." On information and belief, Tyson formed this task force after observing the impact of COVID-19 on its China operations.

50.53. On information and belief, by late-March or early-April, Tyson Foods executives and supervisors or managers at the Waterloo Facility were aware that COVID-19 was spreading through the plant.

51.54. On April 3, 2020, the CDC recommended that all Americans wear face coverings in public to prevent asymptomatic spread of COVID-19.

52.55. Tyson Foods did not provide its workers at the Waterloo Facility with sufficient face coverings, respirators, or other personal protective equipment.

56.     Tyson Foods did not implement or enforce sufficient social distancing measures at the Waterloo Facility.

57.     The Executive Defendants and Supervisory Defendants had advance notice of the danger COVID-19 posed to workers.

58.     In March, COVID-19 outbreaks occurred at Tyson's Columbus Junction plant and Camilla plant (in Georgia).  Four Tyson employees at the Camilla plant died from the virus and two employees at the Columbus Junction facility died.

53.59.  Waterloo employees were ordered to deliver parts to the Columbus Junction plant during the Columbus Junction outbreak.  These employees did not quarantine and were not tested for COVID-19 when they returned to the Waterloo Facility.

60.     On or about April 6, 2020, Tyson temporarily suspended operations at its Columbus Junction plant after more than two dozen employees tested positive for COVID-19. Consequently, a portion of the hogs that would have been processed at Columbus Junction were redirected to the Waterloo Facility.

61.     In March and April, Packers Sanitation Services Incorporated (PSSI) employees moved back-and-forth between Columbus Junction and the Waterloo Facility.  PSSI employees arriving from Columbus Junction did not quarantine and were not tested for COVID-19 prior to entering the Waterloo Facility.

62.     By the time COVID-19 was detected at the Waterloo Facility, the Executive Defendants were fully informed of prior and ongoing outbreaks at Tyson facilities in China, Columbus Junction, and Camilla.  At a minimum, the Supervisory Defendants were well informed of the Columbus Junction outbreak.

63.     On or about April 6, 2020, Tyson Foods installed temperature check stations to scan persons entering the Waterloo Facility for fever.  Tyson knew or should have known these temperature checks did not function as designed and workers taking certain medications could lower their temperatures prior to coming to work and pass through even if they were ill.

64.     The Supervisory Defendants did not require truck drivers and subcontractors (such as PSSI employees) to have their temperatures checked before entering the Facility.

65.     In late-March or early-April, the Supervisory Defendants and most managers at the Waterloo Facility started avoiding the plant floor because they were afraid of contracting the virus. Consequently, as the virus spread through the plant, the Supervisory Defendants and other managers increasingly delegated managerial authority and responsibilities to low-level supervisors with no management training or experience.

66.     In March and April the Supervisory Defendants cancelled regularly scheduled safety meetings.

67.     Even after learning of positive COVID-19 tests within the Waterloo Facility, the Supervisory Defendants directed supervisors to deny knowledge of COVID-19 cases at the plant.

68.     Consequently, in March and April supervisors—at the direction of the Supervisory Defendants—falsely denied the existence of "confirmed cases" or "positive tests" within the Waterloo Facility.

69.     In April, the Supervisory Defendants falsely told workers they had a responsibility to keep working in order to ensure Americans don't go hungry.

54.     In April, the Supervisory Defendants falsely told workers that they would be notified if they had been in close contact with a co-employee with a confirmed diagnosis of COVID-19.

55.     On or about April 6, 2020, Tyson Foods installed temperature check stations to scan persons entering the Waterloo Facility for fever.  Tyson knew or should have known these temperature checks did not function as designed and workers taking certain medications could lower their temperatures prior to coming to work and pass through even if they were ill.

56.70. On April 10, 2020, Black Hawk County Sherriff Tony Thompson and Black Hawk County health officials visited the Waterloo Facility.

57.71. According to Sherriff Thompson, working conditions at the Waterloo Facility "shook [him] to the core."  Workers were crowded elbow to elbow; most without face coverings.

72.     Sheriff Thompson and other local officials lobbied Tyson to close the plant, but the company refused.

58.73. Around this time, Defendant Tom Hart, the Plant Manager of the Waterloo Facility, organized a cash buy-in, winner-take-all betting pool for supervisors and managers to wager how many employees would test positive for COVID-19.

59.74. On the night of April 12, 2020, nearly two-dozen Tyson employees were admitted to the emergency room at MercyOne Waterloo Medical Center.

60.     On April 14, Black Hawk County officials asked Tyson to temporarily shut down the plant.  Again, the company refused. On April 14, Black Hawk County officials asked Tyson to temporarily shut down the Waterloo plant due to the outbreak of positive cases and the risks to Tyson employees and the community.  Again, the company refused.

61.75. On April 16, 2020, Tyson company officials publicly denied a COVID-19 outbreak at the Waterloo Facility.[2]

---

[2] *See* https://wcfcourier.com/business/local/tyson-workers-say-they-work-sick-clinic-seeing-tons-of-covid-19/article_965e046b-f4e8-5c57-99dd-2b9938734909.html

76.    On or about April 17, 2020, twenty local elected officials sent a letter to Tyson Foods imploring the company to take steps "to ensure the safety and well-being of Tyson's valuable employees and our community" and to "voluntarily cease operations on a temporary basis at [the] Waterloo Facility so that appropriate cleaning and mitigation strategies can take place."

62.    On or about April 17, 2020, twenty local elected officials sent a letter to Tyson Foods imploring the company to take steps "to ensure the safety and well-being of Tyson's valuable employees and our community" and to "voluntarily cease operations on a temporary basis at [the] Waterloo Facility so that appropriate cleaning and mitigation strategies can take place." The letter advised Tyson that: at least one Tyson employee had informed Waterloo health care providers that he or she had been transferred to the Waterloo Facility from Tyson's Columbus Junction plant, which had closed due to a COVID-19 outbreak; workers did not have sufficient personal protective equipment; social distancing measures were not being implemented or enforced on the plant floor or in employee locker rooms; nurses at the Waterloo Facility lacked sufficient medical supplies and were unable to accurately conduct temperature checks; and because of language barriers, non-English speaking employees mistakenly believed they could return to work while sick. On or about April 19, Iowa state lawmakers filed an OSHA complaint against Tyson Foods after Waterloo employees complained of unsafe working conditions amid the coronavirus pandemic. The complaint alleged: at least one Tyson employee had informed Waterloo health care providers that he or she had been transferred to the Waterloo Facility from Tyson's Columbus Junction plant, which had closed due to a COVID-19 outbreak; workers did not have sufficient personal protective equipment; social distancing measures were not being implemented or enforced on the plant floor or in employee locker rooms; nurses at the

Waterloo Facility lacked sufficient medical supplies and were unable to accurately conduct temperature checks; and because of language barriers, non-English speaking employees mistakenly believed they could return to work while sick.

63.77.  Tyson refused to close the plant and did not acknowledge the letter.

64.78.  On information and belief, Tyson transferred workers to the Waterloo Facility from its Columbus Junction plant after it shut down due to a COVID-19 outbreak.

65.79.  On information and belief, Tyson failed to test or adequately quarantine workers from the Columbus Junction plant before allowing them to enter the Waterloo Facility.

66.  On information and belief, Tyson permitted subcontractors from one or more plants that had shut down due to COVID-19 outbreaks to enter and move about the Waterloo Facility.

67.  On information and belief, Tyson did not test or adequately quarantine these subcontractors before allowing them to enter and move about the Waterloo Facility.

80.  The Supervisory Defendants permitted or encouraged sick and symptomatic employees and asymptomatic employees known or suspected to have been exposed to COVID-19 to continue working at the Waterloo Facility.  At least one worker at the facility vomited on the production line and management allowed him to continue working and return to work the next day.

68.  On information and belief, Tyson permitted or encouraged sick and symptomatic employees and asymptomatic employees known or suspected to have been exposed to COVID-19 to continue working at the Waterloo Facility.  At least one worker at the facility vomited on the production line and management allowed him to continue working and return to work the next day.

81.    The Supervisory Defendants ordered sick employees who were tested at the Waterloo Facility to return to work and continue working until they were notified that they had tested positive for COVID-19.

82.    Defendant John Casey *explicitly directed* supervisors to ignore symptoms of COVID-19.  Mr. Casey told supervisors they had to show up to work, even if they were exhibiting symptoms of COVID-19, and he directed supervisors to make their direct reports come to work, even if those direct reports were showing symptoms of COVID-19.

83.    On one occasion, Mr. Casey intercepted a sick supervisor en-route to get tested and ordered the supervisor to get back to work, adding, "we all have symptoms—you have a job to do."

69. 84.  Tyson offered $500 "thank you bonuses" to employees who turned up for every scheduled shift for three months.  This policy further incentivized sick workers to continue coming to work.

85.    On information and belief, supervisors or managers at the Tyson Waterloo facility told employees that their co-workers were sick with the flu (not COVID-19) and warned them not to discuss COVID-19 at work.   In March and April, supervisors and managers at the Waterloo Facility told employees that their co-workers were sick with the flu (not COVID-19) and warned them not to discuss COVID-19 at work.

70.

86.    The Supervisory Defendants regularly downplayed the dangers of COVID-19. For instance, John Casey regularly referred to COVID-19 as the "glorified flu" and told workers not to worry about it because "it's not a big deal; everyone is going to get it."

71.87.  On information and belief, hHigh-level Tyson executives began lobbying the White House for COVID-19 related liability protections as early as March and continued their lobbying efforts throughout April.  Tyson officials dined at the White House and participated in several calls with President Trump and Vice President Pence during March and April.

72.88.  On information and belief, Tyson executives lobbied, or directed others to lobby, members of the U.S. House of Representatives or the U.S. Senate for COVID-19 related liability protections.

73.89.  On information and belief, Tyson executives lobbied, or directed others to lobby, Iowa Governor Reynolds for COVID-19 related liability protections.

74.90.  On information and belief, Tyson executives successfully lobbied, or directed others to lobby, Governor Reynolds to issue an executive order stating that only the state government, not local governments, had the authority to close businesses in northeast Iowa, including the Tyson Waterloo facility.

75.91.  On or about April 20, 2020, Governor Reynolds held a conference call with the CEO of Tyson Foods, other high--ranking Tyson officials, and Tyson lobbyist Matt Eide.  On information and belief, Tyson officials downplayed the seriousness of the COVID-19 outbreak at the Waterloo Facility and exaggerated the efficacy of safety measures implemented at the facility.

76.92.  According to Tyson Foods, the company began winding down operations at the Waterloo fFacility on April 20 because a lack of available healthy labor, but the plant did not shut down until April 22, after the company had processed the remaining hog carcasses in its cooler.

77.93.  On April 22, 2020, Tyson Foods announced plans to indefinitely suspended operations at the Waterloo Facility.

78.94.  On or about April 26, 2020, Tyson Foods placed a full-page advertisement in The New York Times, Washington Post and Arkansas Democrat-Gazette entitled "A Delicate Balance: Feeding the Nation and Keeping Our Employees Healthy," asserting which asserted that "the food supply chain is breaking."  The advertisement, signed by Defendant John H. Tyson, warned that "millions of pounds of meat will disappear from the [U.S.] supply chain" due to plant closures and, "[a]s a result, there will be limited supply of our products available in grocery stores" until closed facilities reopen.  The advertisement stressed that Tyson had a "responsibility to feed our nation."

95.  On numerous occasions in April, Tyson executives (including Defendants John H. Tyson, Noel W. White, Dean Banks, and Stephen R. Stouffer) and company spokespersons (including Liz Croston and Gary Mickelson) publicly argued that it was necessary to continue operating meat processing facilities during the pandemic (despite uncontrolled COVID-19 outbreaks at many of those facilities) in order to feed Americans.

79.  Tyson publicly argued that it was necessary to continue operating meat processing facilities during the pandemic (despite uncontrolled COVID-19 outbreaks at many of those facilities) in order to feed Americans.

80.96.  Tyson exports to China increased by 600% in the first quarter of 2020.  In fact, Tyson exported 1,289 tons of pork to China in April 2020, its largest single month total in more than three years.

81.97. On April 28, President Trump signed an executive order classifying meat processing plants as essential infrastructure that must remain open. The stated purpose for the order was to avoid risk to the nation's food supply.

82.98. On May 1, 2020, the human resources director of the Tyson Waterloo Facility told local officials that the plant was weeks away from reopening; however, the plant reopened six days later.

83.99. The Black Hawk County Health Department has recorded more than 1,000 infections among Tyson employees—more than one third of the Tyson Waterloo workforce—and at least 5 workers have died.

84.100. Dr. Nafissa Cisse Egbuonye, director of the Black Hawk County Health Department, attributed 90% of the county's COVID-19 cases to the Tyson Waterloo Facility.

85.101. A grossly disproportionate number of Tyson Waterloo workers have been infected with COVID-19 compared to the general populations of Black Hawk County and Iowa.

86.102. At the time of filing this lawsuit, more More than 8,500 Tyson employees have contracted COVID-19, more than double the number for any other company, and at least 20 have died nationwide. A grossly disproportionate number of Tyson workers have been infected with COVID-19 compared to the general population of the United States.

103. At all relevant times, the Supervisory Defendants and Executive Defendants individually and collectively had responsibility for Ms. Buljic, Mr. Garcia and Mr. Ayala's safety and work conditions.

87. At all relevant times, the Defendants individually and collectively had responsibility for Mr. Fernandez's safety and work conditions.

88.104.Plaintiff Oscar Fernandez, as Administrator of the Estate of Isadro Fernandez, seeks recovery from Defendants for all damages cognizable under Iowa law including but not limited to:

a.     Isidro Fernandez's pre-death physical and mental pain and suffering;

b.     Isidro Fernandez's pre-death loss of function of the mind and body;

c.     Isidro Fernandez's pre-death fright and emotional distress;

d.     Isidro Fernandez's pre-death medical expenses;

e.     Pecuniary loss of accumulation to the Estate of Isidro Fernandez;

f.     Interest on premature burial expenses; and

g.     Past and future loss of the love, services, society, companionship, support, affection, and consortium suffered by Celia Fernandez as a result of the death of her husband.

h.     Past and future loss of the love, services, society, companionship, support, affection, and consortium suffered by Oscar Fernandez, Alejandro Fernandez, Angelina Fernandez, Sergio Fernandez and Maria Fernande as a result of the death of their father.

### FIRST CAUSE OF ACTION
### CLAIMS AGAINST TYSON FOODS
(FRAUDULENT MISREPRESENTATION, VICARIOUS LIABILITY AND PUNITIVE DAMAGES)

89.105.Plaintiff incorporates by reference all allegations contained in this Complaint.

90.106.On information and belief, In March and April of 2020, Defendant Tyson Foods, through the Supervisory Defendants,Defendant Tyson Foods made numerous false representations to Isidro Fernandez, and other workers at the Waterloo Facility concerning: (1) the presence and spread of COVID-19 at the facility; (2) the importance of protecting and keeping workers safe; (3) the efficacy of safety measures implemented at the facility; and (4) the

need to keep the facility open to avoid U.S. meat shortages.

91.107. In March and April, Tyson Foods, through the Supervisory Defendants, On information and belief, Tyson Foods falsely represented to Mr. Fernandez and others workers at the Waterloo Facility that:

        a.      COVID-19 had not been detected at the facility;

        b.      COVID-19 was not spreading through the facility;

        c.      Worker absenteeism was unrelated to COVID-19;

        d.      Sick workers were not permitted to enter the facility;

        e.      Workers from other Tyson plants that had shut down due to COVID-19 outbreaks were not permitted to enter the Waterloo Facility;

        f.e.      Sick or symptomatic workers would be sent home immediately and would not be permitted to return until cleared by health officials;

        g.f.      Workers would be notified if they had been in close contact with an infected co-worker;

        h.g.      Tyson's "top priority" is the health and safety of its "team members;"

        i.h.      Safety measures implemented at the facility would prevent or mitigate the spread of COVID-19 and protect workers from infection;

        j.i.      The Waterloo Facility needed to stay open in order to avoid U.S. meat shortages; and

        k.j.      The Waterloo Facility was a safe work environment.

92.108. Tyson Foods knew these representations were false, and knew or should have known that it was wrong to make such false representations.

93.109. These representations were material in that Mr. Fernandez would not have

continued coming to work had he been informed of the extent of the COVID-19 outbreak at the Waterloo Facility.

94.110. Tyson intended by these false representations to deceive workers at the Waterloo Facility, including Mr. Ferndandez, and to induce them to continue working despite the uncontrolled COVID-19 outbreak at the plant and the health risks associated with working at the Waterloo Facility.

95.111. Mr. Fernandez and others accepted and relied on Tyson's representations as true, and were justified in doing so.

96.112. Tyson Foods thereby induced Mr. Fernandez and others to continue working at the Waterloo Facility.

97.113. Tyson's false representations directly and proximately caused Plaintiff's injuries and were a substantial factor in causing Plaintiff's injuries.

98.114. Tyson Foods is vicariously liable for the culpable acts and omissions committed by all of its agents acting within the course and scope of their agency, including but not limited to the executives and supervisors named in this Complaint.

99.115. Tyson Foods' acts and omissions were grossly negligent, reckless, intentional, and constitute willful and wanton misconduct.

100.116. Tyson Foods' fraudulent misrepresentations and prolonged refusal to temporarily close down the Waterloo Facility despite knowing that many workers at the plant had tested positive for COVID-19 and despite knowing that COVID-19 was rapidly spreading through the workforce at the Waterloo Facility are evidence of Tyson's incorrigible, willful and wanton disregard for workplace safety and culpable state of mind.

101.117. Tyson knowingly and intentionally prioritized profits over the health,

safety and well-being of its ~~their~~ Waterloo employees.

~~102.~~118.     Tyson's lobbying efforts for liability protections while simultaneously failing to sufficiently protect its workers from COVID-19 is further evidence of the company's incorrigible, willful and wanton disregard for workplace safety and culpable state of mind.

~~103.~~119.     An award of punitive damages is necessary to punish Tyson Foods for its willful and wanton disregard for workplace safety and to deter it and other similarly situated companies from jeopardizing workers' lives in the future.

**SECOND CAUSE OF ACTION**
**CLAIMS AGAINST TYSON EXECUTIVES**
(GROSS NEGLIGENCE AND PUNITIVE DAMAGES)

~~104.~~120.     Plaintiff incorporates by reference all allegations contained in this Complaint.

~~105.     Hereinafter John H. Tyson, Noel W. White, Dean Banks, Stephen R. Stouffer, Tom Brower, and Mary A. Oleksiuk, will be collectively referred to as the "Executive Defendants."~~

~~106.~~121.     At all relevant times, Tyson Foods employed the Executive Defendants in managerial capacities.

~~107.~~122.     At all relevant times, the Executive Defendants were acting within the course and scope of their employment.

123.     The Executive Defendants had a duty to exercise reasonable care to prevent injuries to employees such as Isidro Fernandez.

~~108.~~124.     The Executive Defendants were regularly briefed on positive COVID-19 cases at Tyson facilities, and they learned that the virus had been detected at the Waterloo Facility within days of the first confirmed case.

~~109.~~125.     The Executive Defendants breached their duty through acts and omissions

including but not limited to:

    a.    Failing to develop or implement worksite assessments to identify COVID -19 risks and prevention strategies at the Waterloo plant;

    b.    Failing to develop or implement testing and workplace contact tracing of COVID-19 positive workers at the Waterloo plant;

    c.    Failing to develop and implement a comprehensive screening and monitoring strategy aimed at preventing the introduction of COVID-19 into the worksite, including a program to effectively screen workers before entry into the workplace; return to work criteria for workers infected with or exposed to COVID-19; and criteria for exclusion of sick or symptomatic workers;

    d.    Allowing or encouraging sick or symptomatic workers to enter or remain in the workplace;

    e.    Failing to promptly isolate and send home sick or symptomatic workers;

    f.    Failing to configure communal work environments so that workers are spaced at least six feet apart;

    g.    Failing to modify the alignment of workstations, including those along processing lines, so that workers do not face one another;

    h.    Failing to install physical barriers, such as strip curtains, plexiglass or similar materials, or other impermeable dividers or partitions, to separate or shield workers from each other;

    i.    Failing to develop, implement or enforce appropriate cleaning, sanitation, and disinfection practices to reduce exposure or shield workers from

COVID-19 at the Waterloo plant;

j.      Failing to provide all employees with appropriate personal protective equipment, including face coverings or respirators;

k.      Failing to require employees to wear face coverings;

l.      Failing to provide sufficient hand washing or hand sanitizing stations throughout the Waterloo Facility;

m.      Failing to slow production in order to operate with a reduced work force;

n.      Failing to develop, implement or enforce engineering or administrative controls to promote social distancing;

o.      Failing to modify, develop, implement, promote, and educate workers, including those with limited or non-existent English language abilities, on revised sick leave, attendance or incentive policies to ensure that sick or symptomatic workers stay home;

p.      Failing to ensure that workers, including those with limited or non-existent English language abilities, are were aware of and understooand modified sick leave, attendance or incentive policies;

q.      Failing to ensure adequate ventilation in work areas to help minimize workers' potential exposures and failing to minimize air from fans blowing from one worker directly at another worker;

r.      Failing to establish, implement, promote, and enforce a system for workers, including those with limited or non-existent English language abilities, to alert supervisors if they are experiencing signs or symptoms of COVID-19 or if they have had recent close contact with a suspected or

confirmed COVID-19 case;

s.      Failing to inform workers, including those with limited or non-existent English language abilities, who have had close contact with a suspected or confirmed COVID-19 case;

t.      Failing to educate and train workers and supervisors, including those with limited or non-existent English language abilities, about how they can reduce the spread of, and prevent exposure to COVID-19;

u.      Failing to encourage or require workers, including those with limited or non-existent English language abilities, to stay home when sick;

v.      Failing to inform or warn workers that persons suspected or known to have been exposed to COVID-19 at other Tyson plants, including the Columbus Junction Facility, were permitted to enter the Waterloo Facility without adequately quarantining or testing negative for COVID-19 prior to entry;

w.      Operating the Waterloo Facility in a manner that resulted in more than 1,000 infected employees and five deaths;

x.      Making false and fraudulent misrepresentations on behalf of Tyson Foods as set forth in the First Cause of Action above;

y.      Failing to provide and maintain a safe work environment free from recognized hazards that cause or are likely to cause serious physical harm or death;

z.      Failing to take reasonable precautions to protect workers from foreseeable dangers;

aa.   Failing to abide by State and Federal rules, regulations, and guidance;

bb.   Failing to abide by appropriate OSHA standards, directives, and guidance; and

cc.   Failing to exercise reasonable care under all of the circumstances.

~~110.~~126.   The Executive Defendants' acts and omissions were grossly negligent, reckless, intentional, and constituted willful and wanton disregard for the safety of workers.

~~111.~~127.   The Executive Defendants engaged in gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of Tyson workers, including Plaintiff.

128.   The Executive Defendants knew of the danger to be apprehended (i.e., an uncontrolled COVID-19 outbreak at the Waterloo Facility probable to result in serious illness or death).

129.   The Executive Defendants were fully informed of prior COVID-19 outbreaks at Tyson facilities in China, Columbus Junction and Camilla, and they knew that three employees at the Camilla plant had died from COVID-19 during the first week of April.

130.   The Executive Defendants authorized or directed the Columbus Junction plant to temporarily close after learning that approximately two-dozen employees testified positive for COVID-19.  But they refused to slow or pause production at the Waterloo Facility even after learning that many more employees had tested positive.

131.   The Executive Defendants knew, from the moment they learned that COVID-19 had been detected at the Waterloo Facility, that failure to take prompt and appropriate action (see ¶ 125(a)-(cc)) would almost certainly lead to a COVID-19 outbreak at the Facility resulting in injury or death.

132.   The Executive Defendants determined that slowing or pausing production at the

Waterloo Facility would cause the company to lose millions of dollars per day.

133.    The Executive Defendants forbid Defendant Tom Heart from slowing or pausing production at the Waterloo Facility and directed Mr. Heart to keep the Waterloo Facility running at full production for as long as possible.

112.134.    As the Waterloo outbreak progressed and worsened, the Executive Defendants were regularly briefed on the horrific conditions within the plant.

113.135.    The Executive Defendants knew or should have known that their conduct was probable to cause injury to employees. to become seriously ill or die.

114.136.    The Executive Defendants consciously failed to avoid the danger. They recognized the danger of a COVID-19 outbreak at the Ffacility and failed to take sufficient precautions to avoid an outbreak.

115.137.    The Executive Defendants' acts and omissions directly and proximately caused Plaintiff's injuries and were a substantial factor in causing those injuries.

116.138.    The Executive Defendants' prolonged refusal to slow production or temporarily close down the Waterloo Facility despite knowing that many workers at the plant had tested positive for COVID-19 and despite knowledge that COVID-19 was rapidly spreading through the workforce at the Waterloo Facility is evidence of their incorrigible, willful and wanton disregard for workplace safety and culpable state of mind.

117.139.    The Executive Defendants knowingly and intentionally prioritized company profits over the health, safety and well-being of Tyson's Waterloo employees.

118.140.    The Executive Defendants' lobbying efforts for liability protections while simultaneously failing to sufficiently protect workers from COVID-19 is further evidence of their incorrigible, willful and wanton disregard for workplace safety and culpable state of mind.

119.141. An award of punitive damages is necessary to punish the Executive Defendants for their willful and wanton disregard for workplace safety and to deter them and other similarly situated executives and companies from jeopardizing workers' lives in the future.

### THIRD CAUSE OF ACTION
### CLAIMS AGAINST SUPERVISORY DEFENDANTS
#### (GROSS NEGLIGENCE, FRAUDULENT MISREPRESENTATION AND PUNITIVE DAMAGES)

120.142. Plaintiff incorporates by reference all allegations contained in this Complaint.

121. Hereinafter Tom Hart, Hamdija Beganovic, James Cook, Ramiz Muheljic, Missia Abad Bernal, and John/Jane Does 1-10 will be collectively referred to as the "Supervisory Defendants."

122.143. At all relevant times, Tyson Foods employed the Supervisory Defendants in managerial capacities.

123.144. At all relevant times, the Supervisory Defendants were within the course and scope of their employment.

124.145. The Supervisory Defendants had a duty to exercise reasonable care to prevent injuries to employees such Plaintiff.

125.146. The Supervisory Defendants breached their duty through acts and omissions including but not limited to:

    a.    Failing to develop or implement worksite assessments to identify COVID-19 risks and prevention strategies at the Waterloo plant;

    b.    Failing to develop or implement testing and workplace contact tracing of COVID-19 positive workers at the Waterloo plant;

    c.    Failing to develop and implement a comprehensive screening and monitoring strategy aimed at preventing the introduction of COVID-19

into the worksite, including a program of screening workers before entry into the workplace; return to work criteria for workers infected with or exposed to COVID-19; and criteria for exclusion of sick or symptomatic workers;

d.      Allowing or encouraging sick or symptomatic workers to enter or remain in the workplace;

e.      Failing to promptly isolate and send home sick or symptomatic workers;

f.      Failing to configure communal work environments so that workers are spaced at least six feet apart;

g.      Failing to modify the alignment of workstations, including along processing lines, so that workers do not face one another;

h.      Failing to install physical barriers, such as strip curtains, plexiglass or similar materials, or other impermeable dividers or partitions, to separate or shield workers from each other;

i.      Failing to develop, implement or enforce appropriate cleaning, sanitation, and disinfection practices to reduce exposure or shield workers from COVID-19 at the Waterloo plant;

j.      Failing to provide all employees with appropriate personal protective equipment, including face coverings or respirators;

k.      Failing to require employees to wear face coverings;

l.      Failing to provide sufficient hand washing or hand sanitizing stations throughout the Waterloo Facility;

m.      Failing to slow production in order to operate with a reduced work force;

n.      Failing to develop, implement or enforce engineering or administrative controls to promote social distancing;

o.      Failing to modify, develop, implement, promote, and educate workers, including those with limited or non-existent English language abilities, on revised sick leave or incentive policies to ensure that sick or symptomatic workers are not in the workplace;

p.      Failing to ensure that workers, including those with limited or non-existent English language abilities, are were aware of and understooand modified sick leave or incentive policies;

q.      Failing to ensure adequate ventilation in work areas to help minimize workers' potential exposures and failing to minimize air from fans blowing from one worker directly at another worker;

r.      Failing to establish, implement, promote, and enforce a system for workers, including those who with limited or non-existent English language abilities, to alert their supervisors if they are experiencing sings or symptoms of COVID-19 or if they have had recent close contact with a suspected or confirmed COVID-19 case;

s.      Failing to inform workers, including those with limited or non-existent English language abilities, who have had close contact with a suspected or confirmed COVID-19 case;

t.      Failing to educate and train workers and supervisors, including those with limited or non-existent English language abilities, about how they can reduce the spread of, and prevent exposure to COVID-19;

u.	Failing to encourage or require workers, including those with limited or non-existent English language abilities, to stay home when sick;

v.	Failing to inform or warn workers that persons suspected or known to have been exposed to COVID-19 at other Tyson plants, including the Columbus Junction Facility, were permitted to enter the Waterloo Facility without adequately quarantining or testing negative for COVID-19 prior to entry;

w.	Operating the Waterloo Facility in a manner that resulted in more than 1,000 infected employees and five deaths;

x.	Making false and fraudulent misrepresentations on behalf of Tyson Foods as set forth in the First Cause of Action above;

y.	Failing to provide and maintain a safe work environment free from recognized hazards that are causing or are likely to cause serious physical harm or death;

z.	Failing to take reasonable precautions to protect workers from foreseeable dangers;

aa.	Failing to abide by State and Federal rules, regulations, and guidance;

bb.	Failing to abide by appropriate OSHA standards, directives, and guidance; and

cc.	Failing to exercise reasonable care under all of the circumstances.

~~126.~~147.	The Supervisory Defendants' acts and omissions were grossly negligent, reckless, intentional, and constituted willful and wanton disregard for the safety of workers.

~~127.~~148.	The Supervisory Defendants engaged in gross negligence amounting to

such lack of care as to amount to wanton neglect for the safety of Tyson workers, including Mr. Fernandez.

128.149.    The Supervisory Defendants knew of the danger to be apprehended (i.e., an uncontrolled COVID-19 outbreak at the Waterloo Facility probable to result in serious illness or death).

129.150.    The Supervisory Defendants knew or should have known that their conduct was probable to cause employees to become seriously ill or dieinfected with COVID-19.

130.151.    The Supervisory Defendants consciously failed to avoid the danger. They recognized the danger of a COVID-19 outbreak at the facility and failed to take sufficient precautions to avoid an outbreak.

131.152.    The Supervisory Defendants' acts and omissions directly and proximately caused Plaintiff's injuries and were a substantial factor in causing those injuries.

132.153.    The Supervisory Defendants made fraudulent misrepresentations to the Waterloo workforce.  They made false statements concerning the presence and spread of COVID-19 at the Waterloo Facility, the importance of protecting and keeping employees safe, the breadth and efficacy of safety measures implemented at the facility, and the importance of keeping the facility open.  The Supervisory Defendants knew these representations were false; they knew or should have known it was wrong to make such false representations; and they intended to deceive and induce Waterloo employees, including Isidro Fernandez, to continue working despite the danger of COVID-19.

133.154.    The On information and belief, the Supervisory Defendants falsely represented to Mr. Fernandez and others workers at the Waterloo Facility that:

    a.    COVID-19 had not been detected at the facility;

b. COVID-19 was not spreading through the facility;

c. Worker absenteeism was unrelated to COVID-19;

d. Sick workers were not permitted to enter the facility;

e. Workers from other Tyson plants that had shut down due to COVID-19 outbreaks were not permitted to enter the Waterloo facility;

f. Sick or symptomatic workers would be sent home immediately and would not be permitted to return until cleared by health officials;

g. Workers would be notified if they had been in close contact with an infected co-worker;

h. Tyson's "top priority" is the health and safety of its "team members;"

i. Safety measures implemented at the facility would prevent the spread of COVID-19 and protect workers from infection;

j. The Waterloo Facility needed to stay open in order to avoid U.S. meat shortages; and

k. The Waterloo Facility was a safe work environment.

134.155. The Supervisory Defendants knew these representations were false, and knew or should have known that it was wrong to make such false representations.

135.156. These representations were material in that Mr. Fernandez would not have continued coming to work had he been informed of the extent of the COVID-19 outbreak at the Waterloo Facility.

136.157. The Supervisory Defendants intended by these false representations to deceive workers at the Waterloo facility, including Mr. Fernandez, and to induce them to continue working at the facility despite the uncontrolled COVID-19 outbreak at the plant and the

health risks associated with working at the Waterloo Facility.

137.158.    Mr. Fernandez and others accepted and relied on the Supervisory Defendants' representations as true, and were justified in doing so.

138.159.    The Supervisory Defendants thereby induced Mr. Fernandez and others to continue working at the Waterloo Facility.

139.160.    The Supervisory Defendants' false representations directly and proximately caused Plaintiff's injuries and were a substantial factor in causing Plaintiff's injuries.

140.161.    The Supervisory Defendants' fraudulent misrepresentations and prolonged refusal to temporarily close down the Waterloo Facility despite knowing that many workers at the plant had tested positive for COVID-19 and despite knowing that COVID-19 was rapidly spreading through the Waterloo workforce are evidence of the Supervisory Defendants' incorrigible, willful and wanton disregard for workplace safety and culpable state of mind.

141.162.    An award of punitive damages is necessary to punish the Supervisory Defendants for their willful and wanton disregard for workplace safety and to deter them and other similarly situated supervisors and companies from jeopardizing workers' lives in the future.

FOURTH CAUSE OF ACTION
CLAIMS AGAINST ELIZABETH CROSTON
(FRAUDULENT MISREPRESENTATION)

142.    Plaintiff incorporates by reference all allegations contained in this Complaint

143.    On information and belief, Defendant Elizabeth Croston made fraudulent misrepresentations on behalf of Tyson Foods.

144.    In her capacity as company spokeswoman, Ms. Croston made widely publicized false statements concerning the presence and spread of COVID-19 at Tyson facilities (including

Waterloo), the importance of protecting and keeping "team members" safe, and the breadth and efficacy of safety measures implemented "at all Tyson Facilities."

145.    Ms. Croston knew or should have known these representations were false, and she knew or should have known it was wrong to make such false representations.

146.    These representations were material.

147.    Ms. Croston intended to deceive and induce Tyson employees, including Isidro Fernandez, to continue working despite the danger of COVID-19.

148.    Mr. Fernandez and others accepted and relied on Ms. Croston's representations as true, and were justified in doing so.

149.    Ms. Croston thereby induced Mr. Fernandez and others to continue working at the Waterloo Facility.

150.    Ms. Croston's false representations directly and proximately caused Mr. Fernandez's injuries and were a substantial factor in causing his injuries.

## PRAYER FOR RELIEF

Plaintiff respectfully request that the Court enter Judgment against Defendants for:

I.    Economic damages in an amount consistent with the allegations in the Complaint and the proof at trial;

II.    Non-economic damages in an amount consistent with the allegations in this Complaint and the proof at trial;

III.    Punitive damages in an amount sufficient to punish the Defendants for their egregious, life-threatening misconduct and to deter similar misconduct in the future; and

IV.    Costs, interest and all other relief to which Plaintiff is entitled by law or equity.

DATED this ——11th day of August November 2020.

/s/ Thomas P. Frerichs
Thomas P. Frerichs (AT0002705)
Frerichs Law Office, P.C.
106 E. 4th Street, P.O. Box 328
Waterloo, IA 50704-0328
319.236.7204 / 319.236.7206 (fax)
tfrerichs@frerichslaw.com

John J. Rausch
Rausch Law Firm, PLLC
3909 University Ave., P.O. Box 905
Waterloo, IA 50704-0905
319.233.35557 / 319.233.3558 (fax)
rauschlawfirm@dybb.com

Mel C. Orchard, III (*pro hac vice*)
G. Bryan Ulmer, III (*pro hac vice*)
Gabriel Phillips (*pro hac vice*)
The Spence Law Firm, LLC
15 S. Jackson Street
P.O. Box 548
Jackson, WY 83001
307.337.1283 / 307.337.3835 (fax)
orchard@spencelawyers.com
ulmer@spencelawyers.com
phillips@spencelawyers.com

*Attorneys for the Plaintiff*


**DEMAND FOR JURY TRIAL**

Plaintiff respectfully requests a Jury of six and submit the requisite fee.


DATED this 11th day of November 2020.

/s/ Thomas P. Frerichs
Thomas P. Frerichs (AT0002705)
Frerichs Law Office, P.C.